[Civ. No. 8232.   Second Appellate District, Division Two.—September 27, 1932.]

ROYAL INDEMNITY COMPANY (a Corporation) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION, PETER SERNA et al., Respondents.

F. Britton McConnell for Petitioners.

A. I. Townsend for Respondents.

THOMPSON (IRA F.), J.—Petitioners ask this court to review an award of the Industrial Accident Commission rendered in favor of Peter Serna against Kahn Construction Company and its insurance carrier, Royal Indemnity Company. The Commission found that Serna had sustained an injury arising out of and in the course of his employment by the Kahn Construction Company, caused by running a steel sliver into his right hand, resulting in infection.

The facts are as follows: On the dates December 22, 23, 26 and 27 of 1930 Serna was employed by the Kahn Construction Company, building contractors, in the capacity of laborer, his duties including that of assisting in the handling of steel plates about sixteen inches square and one or one and one-half inches thick, which were used in the construction of the building. While so engaged, according to the witness Martinez, who was working with him on December 27th, at about a quarter to 4 in the afternoon Serna said to him in Spanish, "I thought I got a sliver." The witness was asked, "Did you understand him to say at that time that he got a sliver in his hand? A. Yes, sir. Q. That was on the last day that you worked together for the Kahn Construction Company? A. Yes." The facts further show that on December 29, 1930, Serna entered the employ of Preston Brothers, subcontractors under the general contractor Kahn Construction Company; that while working for Preston Brothers his work consisted in the handling of bricks; that after working a while Serna noticed that the skin on the thumb of his right hand was worn down almost to the flesh, but that there was no wound and that the hand did not bleed; Serna testified that after working for Preston Brothers four hours or thereabouts he had soreness in both the thumb and wrist of his right hand; that he worked the

day following, his wrist being still sore, and that it began to swell. Serna then went to his home and stayed there until January 2d, when a doctor was sent for who immediately instructed that Serna be taken to a hospital where he remained about six weeks, undergoing two operations on his hand while there.

Petitioners' contention is that the evidence does not justify or support the findings of fact, and in particular that the finding of fact that Serna sustained an injury on or about December 26th arising out of and in the course of his employment by Kahn Construction Company, is not supported by any substantial evidence.

Petitioners rely in particular upon a part of Serna's testimony which is as follows: "Q. Did you have any accident during the four days that you worked for the Kahn Construction Company? A. Accident, you say? Q. Yes. A. No, sir. Q. Nothing unusual happened to you during this four days? A. No, sir, nothing. Q. Did you have any accident during the day that you worked for Preston Brothers on December 29th? A. No, sir; the only thing I noticed was about four or six hours after I started to working, the bricks wore out my thumb tips to almost bleeding. . . . Q. Do you recall at this time of anything happening to either hand or either finger or thumb while you were handling these steel plates? A. No, sir. Q. You heard Mr. Martinez' testimony? A. Yes, sir. Q. Do you have any recollection of saying anything like that to him? A. Well, I never say that I *got* a splinter in there. I never *know* I got one. Q. I am asking you, do you remember of saying anything like that to him? A. No, sir; I did not say nothing like that." (Italics ours.) In his original application Serna stated that his injury was received by handling bricks, and he so stated to one of the doctors who attended him, and in his testimony stated, "I think it comes from the brick because when I started to work in the brick on the 29th in the morning I had nothing in my hand. I am sure it was in perfect condition; both of my hands were in perfect condition." The referee questioned Martinez very carefully as is shown by the following: "Did Serna tell you that he got this sliver from one of these pieces of iron? A. Yes, sir. Q. One of these pieces that he was handling that minute? A. Yes, sir. Q. Right then? A.

Right then." Petitioners claim that any effect of this last quoted testimony falls in the face of the testimony of Serna regarding this incident. It should be noted that Serna was a Mexican and this purported conversation had between Serna and Martinez was in Spanish, and that Dr. Gaulden while attempting to elicit information from Serna regarding his injury was put to the necessity of having a Spanish interpreter present. The foreman of the Kahn Construction Company testified that Martinez came to him and told him of the injury to Serna's hand as follows: "Q. . . . Did you at any time while foreman for the Kahn Construction Company receive notice from anyone on the job that Mr. Serna had received an injury? A. Yes, I did, through another man; Mr. Martinez told me; that is the first I heard. . . . Q. Did Mr. Martinez mention to you some injury to Mr. Serna before Mr. Serna left your crew? A. That I could not say exactly. Mr. Serna did not tell me that he had hurt his hand. Mr. Martinez came along and said to me: 'Mr. Serna has hurt his hand.' Then I asked him how, and all about it. At that time he was working for the Preston Brothers, that is the time Martinez told me, but you see there is a time there between the time they were talking together and the time Martinez came over to me; we just happened to speak about it. . . . Q. To your recollection did Mr. Serna ever work for the Kahn Construction Company after Mr. Martinez told you of this alleged injury to Mr. Serna? A. No. He went from under me over to Preston Brothers and that was all that I had with him. Q. Then he was working for Preston Brothers at the time Mr. Martinez told you about this? A. As near as I can remember. . . . Q. Mr. McFarlane did Mr. Martinez state to you that Mr. Serna had received an injury on the Kahn Construction job, and did Mr. Martinez make that statement to you while Mr. Serna was still working on the Preston job? A. As near as I can remember he did."

It would seem that such an incident as described by Martinez and McFarlane actually did take place but Serna had forgotten it, and the referee who is the judge of the credibility, manner and demeanor of the witnesses made this statement in his decision: "The applicant, himself, is a Mexican and beyond the fact that he was working and

became sick with a badly infected hand, he is not able to give very much light upon either the date of the beginning of infection or as to whether he was working for Preston Brothers or the Kahn Construction Company. Dr. Gaulden testified in part as follows: "He (applicant) told me his hand became sore handling bricks. He could not speak English, and I could not speak in Spanish, and we could not find out much about what had happened. Q. Did you question him through an interpreter? A. Yes."

Petitioners rely upon the testimony of Dr. Gaulden to the effect that the infection which originated in the hand is only one of "20 or 30" places where it might have come from, such as the teeth, tonsils, intestinal tract, etc., and that an infection localized in the hand and arm is no indication that the germ causing the infection entered at the hand or arm; that it may have entered from any other part of the body and localized in the hand and arm. But Doctor Gaulden also stated that there might have been an entry of infection without visible evidences as to the point of entry. Dr. Gaulden also agreed with Dr. Jones that the development of symptoms on the same day as an injury would be a mighty short time for either a streptococcic or staphylococcic infection.

On the other hand, the respondent contends that the report of Dr. Jones, together with the testimony of Martinez and McFarlane justifies the finding of the Commission. Dr. Jones says: "He presents no history of having received an injury upon December 26th which is mentioned in the record. If this applicant had received an injury in the nature of a penetrating wound upon the aforementioned date, it could have caused an infection with subsequent cellulitis, which necessitated operation seven days later. The record is somewhat clouded concerning the history of such injury, but the incubation period is correct for the pathology which was found upon January 2, 1931. Upon December 29th and 30th, this applicant was handling bricks, and his finger tips became tender, but he reports no open lesion upon his thumb or fingers as the result of this type of work. In fact, he reports that he wore gloves upon his right hand, the second day that he worked at this occupation. It was the night of December 30th when the thumb and wrist

became painful and swollen. An injury due to handling bricks causing a swelling of the thumb and wrist, within a twenty-four-hour period, would have to be a virulent infection. Such an infection extending with such great rapidity would have to have been of a streptococcic type, and undoubtedly would have proven fatal.''

Under this condition of the record we find ourselves unable to say that there is no substantial evidence to sustain the finding of the Commission. While it is true that the respondent Serna was unable to remember the sliver incident testified to by Martinez and reported by him to McFarlane, nevertheless the scientific testimony, together with common knowledge, supports the conclusion that an infection occurring during the time that Serna was working for Preston Brothers could not in all probabilities have achieved the mischief manifest in the employee in so short a time. As Dr. Jones testifies, an infection so virulent ''undoubtedly would have proven fatal''. The incident of the sliver, however, checks with scientific observations and experience, i. e., to again quote the last-named physician, ''the incubation period is correct for the pathology which was found upon January 2, 1931''.

Award affirmed.

Craig, Acting P. J., and Stephens, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 25, 1932, and an application by petitioners to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 21, 1932.